NATIONAL ASSOCIATION FOR the ADVANCEMENT OF COLORED PEOPLE ("NAACP"); The Newark Branch, NAACP; The New Jersey State Conference, NAACP; Allen Wallace, Lamara Wapples; Altarik White

v.

NORTH HUDSON REGIONAL FIRE & RESCUE, a body corporate and politic of the State of New Jersey, Appellant.

Alex Matthew DeRojas; Alexander Rodriguez; Randy Vasquez; Carlos A. Castillo; Orlando Duque; Pablo Claro, Intervenor Defendants.

No. 09–1698.

United States Court of Appeals, Third Circuit.

Submitted Under Third Circuit LAR 34.1(a) Feb. 4, 2010.

Filed: March 1, 2010.

David H. Ben–Asher, Esq., Eugenie F. Temmler, Esq., Rabner, Allcorn, Baumgart, Ben–Asher & Tucker, Upper Montclair, NJ, David L. Rose, Esq., Rose & Rose, Washington, DC, Thomas B. Hanrahan, Esq., River Edge, NJ, Thomas R. Kobin, Esq., John L. Shahdanian, II, Esq., Chasan, Leyner & Lamparello, Secaucus, NJ, for Defendants.

Before: McKEE, HARDIMAN, Circuit Judges, and RUFE *, District Judge.

## OPINION OF THE COURT

RUFE, District Judge.

Appellant North Hudson Regional Fire and Rescue ("Regional") brings this matter as an interlocutory appeal of a preliminary injunction from the District of New Jersey. For the reasons that follow, we will *sua sponte* summarily remand the case to the District Court for further proceedings.[2]

### I.

As we write for the parties, who are familiar with the facts and procedural history, we recount only those aspects of the case that are essential to our ruling.

The New Jersey Department of Personnel periodically administers a written and physical firefighter exam for all fire departments in the state of New Jersey. Applicants who take the written and physi-

---

* The Honorable Cynthia M. Rufe, District Judge for the United States District Court for the Eastern District of Pennsylvania, sitting by designation.

2. The District Court's underlying Memorandum Opinion ruled on three motions: NAACP's Motion for Class Certification, NAACP's Motion for Preliminary Injunction, and NAACP's Motion for Bifurcation. The District Court granted NAACP's motions for class certification and preliminary injunction and denied NAACP's bifurcation motion. The only issue challenged on appeal is the District Court's decision to grant preliminary injunction relief.

cal exam are ranked on a Civil Service list based on their test scores. Candidates provide their residence codes, which are then used to determine which individuals will be listed as eligible candidates for municipalities that restrict hiring based on residence. Residency is determined as of the date of a candidate's application.

Regional is a consolidated municipal fire department of 300 employees, providing services to the towns of Guttenberg, North Bergen, Union City, Weehawken, and West New York (the "Member Municipalities"), which are all located in the northern part of Hudson County, New Jersey. Regional restricts hiring to individuals residing in one of the five towns located in its Member Municipalities. Applicants must reside in the Member Municipality at the time of their exams in order to be placed on Regional's residency-restricted candidacy list. When Regional needs to fill a vacancy, it hires the highest ranked individual(s) from its list. Once hired, Regional's firefighters are free to live anywhere in the State of New Jersey.

On April 10, 2007, NAACP, the Newark Branch NAACP, the New Jersey State Conference NAACP, Allen Wallace, Lamara Wapples, and Altarik White (collectively referred to hereinafter as "NAACP") filed a class action complaint against Regional alleging that Regional's geography-based hiring plan caused discrimination against African Americans who reside in the southern part of Hudson County and neighboring Essex and Union counties, in violation of Title VII of the Civil Rights Action of 1964, 42 U.S.C.

§ 1981, and the New Jersey Law Against Discrimination, *N.J.S.A.* 10:5–1 to 49.[3] On December 23, 2008, NAACP filed a motion for preliminary injunction after receiving notice that Regional intended to hire new firefighters.[4]

On February 17, 2009, the District Court held oral argument on NAACP's motion for preliminary injunction. After consideration of the arguments and the parties' expert reports, the District Court granted NAACP's motion and enjoined Regional from hiring candidates from its Member Municipalities list until it obtained a revised Civil Service list that expanded the residency requirement to include residents of south Hudson, Essex, and Union counties.[5]

Applying *N.A.A.C.P. v. City of Bayonne, N.J.*, 134 F.3d 113 (3d Cir.1998), the District Court adopted NAACP's expert's conclusion, which was undisputed by Defendant's expert, that the relevant labor market is the Tri–County area or the entire state of New Jersey. While the experts disagreed as to the "qualified population", the District Court determined that both expert reports support a finding that the residency requirement creates a discriminatory disparate impact. The District Court further determined that Hispanics' employment prospects were not relevant as to whether Regional's current hiring practices discriminate against African Americans because "[d]iscriminatory hiring practices against one group may not be maintained to benefit another group,

---

3. In 2000, the population of the Member Municipalities was 69.6 percent Hispanic; 22.9 percent Caucasian; and 3.4 percent African American. As of July 2008, Regional had 323 full-time employees: 64 were Hispanic; 255 were Caucasian; 2 were African American; and 2 were identified as other races. *See N.A.A.C.P. v. North Hudson Regional Fire & Rescue*, 255 F.R.D. 374, 380 (D.N.J.2009).

4. The parties had previously agreed that Regional would not hire without providing notice to NAACP while the instant District Court case was pending.

5. *North Hudson Regional Fire & Rescue*, 255 F.R.D. at 393.

even if that other group is a protected class." [6]

The District Court ultimately concluded that in light of the ratio between the racial composition of the at-issue jobs, which included two African Americans, and the racial composition of the qualified population in the relevant labor market, which included either 121 or 65 African Americans, depending on the definition of the relevant labor market, NAACP had proven a substantial likelihood of success on the merits of its Title VII class action claim. The District Court also concluded that Regional's residency-restricted hiring plan discriminated against African Americans residing in neighboring counties, which justified its issuance of an injunction preventing Regional from hiring additional firefighters until it obtained a revised Civil Service list that expanded the residency requirements to include residents of southern Hudson, Essex, and Union counties.

Shortly thereafter, Regional filed the instant interlocutory appeal challenging the District Court's decision. Intervenor–Defendants Alex DeRojas, et al. ("Intervenors") joined in this litigation as six Hispanic firefighter candidates on Regional's residency-restricted candidate list. We have jurisdiction over this appeal pursuant to 28 U.S.C. § 1292(a).

### II.

On the Court's own motion, we believe it is necessary to summarily remand this matter for the District Court's further consideration of what implications the recently decided United States Supreme Court decision in *Ricci v. DeStefano,* —— U.S. ——, 129 S.Ct. 2658, 174 L.Ed.2d 490 (2009) may have on this case. As the District Court granted the preliminary injunction in February 2009, and *Ricci* was not decided until June 29, 2009, the District Court was not afforded an opportunity to consider the issue herein appealed, in light of *Ricci,* when it issued its ruling.

In *Ricci,* 118 firefighters in New Haven, Connecticut took examinations to qualify for promotion to the rank of lieutenant or captain. When the examination results showed that white candidates had outperformed minority candidates, the mayor and other local politicians opened a public debate. Some firefighters argued that the exams should be discarded because the results showed the exams to be discriminatory and threatened a lawsuit if the City of New Haven ("New Haven") made promotions based on the exams. Other firefighters argued that the exams were neutral and fair and that they, too, would file a discrimination lawsuit if New Haven relied on the statistical racial disparity, ignored the exam results, and denied promotions to the candidates who had performed well. In the end, New Haven agreed with those who protested the exam results and threw out the examinations. As a result, certain Caucasian and Hispanic firefighters filed suit against New Haven, alleging that by discarding the exam results, New Haven discriminated against them based on their race in violation of Title VII of the Civil Rights Act of 1964 and the Equal Protection Clause of the Fourteenth Amendment. New Haven, in defense of its actions, argued that if it had certified the exam results, it would have faced liability under Title VII for adopting a practice that had a disparate impact on the minority firefighters. The district court granted summary judgment for New Haven and the Second Circuit Court of Appeals affirmed. The U.S. Supreme Court, however, reversed and remanded on the basis that "race-based action like [New Haven's]...is impermissible under Title VII unless the employer can demonstrate a strong basis in

---

**6.** *Id.* at 391.

evidence that, had it not taken the action, it would have been liable under the disparate-impact statute."[7]  The Supreme Court held,

> under Title VII, before an employer can engage in intentional discrimination for the asserted purpose of avoiding or remedying an unintentional disparate impact, the employer must have a strong basis in evidence to believe it will be subject to disparate-impact liability if it fails to take the race-conscious, discriminatory action.[8]

As Justice Kennedy states in his Opinion, the Supreme Court's 5–4 decision in *Ricci* "clarifies how Title VII applies to resolve competing expectations under the disparate-treatment and disparate-impact provisions."[9]  In *Ricci,* the Supreme Court set the new standard for Title VII disparate treatment and disparate impact cases.  Consequently, we conclude that the age and posture of this case justify a summary remand to allow the District Court the opportunity to apply *Ricci* to its factual and legal analysis.

### III.

For the foregoing reasons, we will summarily remand this matter to the District Court for consideration and analysis of *Ricci* and further proceedings consistent with this opinion pursuant to 3d Cir. L.A.R. 27.4 and I.O.P. 10.6.